## Parker, Executor of Wright, *versus* Sulouff.

1. W. conveyed seven tracts of land to S., and took from the latter four bonds and mortgages upon four of the tracts, to secure the payment of the balance of the purchase-money. The interest on the mortgages was at usurious rates. S. conveyed one of the tracts to K., in consideration of a sum named, and the payment of the mortgage to W., the deed further reciting that the purchaser was to hold "subject to the payment of the lien of mortgage of W. to S." In a scire facias on the mortgage against D. and K. as terre-tenant, the other three mortgages having been paid, the defendants offered to set off the usurious interest paid on said three mortgages: *Held,* that the set-off was properly allowed.

2. As S. was personally liable on the bond for the whole amount mentioned therein, if any deficiency arose on the sale of the land he would be obliged to make it good, and should, therefore, be permitted to reduce the amount of his liability in an action against himself on the mortgage given to secure the bond on which his liability remained.

May 25th 1880.　Before MERCUR, GORDON, TRUNKEY, GREEN and STERRETT, JJ.　SHARSWOOD, C. J., and PAXSON, J., absent.

Error to the Court of Common Pleas of *Juniata county :* Of May Term 1880, No. 200.

Scire facias sur mortgage issued by Ezra D. Parker, executor of John Wright, deceased, against David P. Sulouff, with notice to Jacob Sulouff, Keziah Sulouff, his wife, and Turner Sulouff, terre-tenants.　The defendants pleaded "payment."

At the trial, before Junkin, P. J., it appeared that on August 26th 1869, the plaintiff's testator, Wright, conveyed to David P. Sulouff seven tracts of land, and as security for the purchase-money took from him four mortgages, accompanied by bonds, upon four of the tracts of land thus conveyed.　The mortgage in suit was one of these four, and was for $3175.30, payable on April 1st 1873, and covered a farm containing 332 acres.　On all these mortgages the interest was at the rate of eight per cent. per annum.

On the 25th of January 1872, David P. Sulouff and wife conveyed by deed the land bound by the mortgage sued on to Keziah Sulouff, and this deed recited that it is given "in consideration of the sum of $1000, and the payment of the mortgage to John Wright by David P. Sulouff," and further recited, that the conveyance was made "subject to the payment of the lien of mortgage of John Wright by David P. Sulouff."

[Parker *v.* Sulouff.]

Defendants offered to show that, in 1869, David P. Sulouff, the defendant, was indebted to John Wright, the plaintiff's testator, in the sum of $12,441.41, or thereabouts, and to secure the payment thereof, he took from the defendant four several mortgages, on as many separate tracts of land, and payable in different sums and at different times, to wit: On the 1st of April 1870, and annually thereafter till 1st April 1875, inclusive; that interest on the several payments as aforesaid, was counted from the date of the mortgage till the maturity of each payment, at the rate of eight per cent. per annum; that three of the mortgages have been paid and satisfied, including more than $1000 of usurious interest. These facts to be proved by agreements in writing between the parties and other proper writings, and for the purpose of claiming such excessive interest as a credit on the mortgage in suit; and further, to show that the said four mortgages were given for parts of one and the same debt, and that they constituted one transaction.

Objected to. Objection overruled, and evidence admitted.

In the general charge, the court, inter alia, said:

"The next question is, can David P. resist the payment of the mortgage on grounds of usury, after having conveyed the property bound by it to Keziah Sulouff, the terre-tenant? The case of The Miners Trust Co. *v.* Rosenberry, 31 P. F. Smith 309, is relied on as teaching that a purchaser who has assumed the payment of a lien as part of his purchase-money, into which usurious interest has entered, cannot set up that as a defence to its payment. This is clear enough, when the original debtor, as in the case cited, openly appears and expresses his wish that the debt be paid notwithstanding the usury. But it is too clear for argument, that where the original debtor is made a party defendant, though doing so was unavoidable, and even though the proceeding is *in rem*, as in this case, and although no personal liability may spring out of a judgment against him, he is entitled to set up all the defences (not having estopped himself), which would have been available, had he continued the owner of the land bound by the original obligation. This proposition is so manifest that the mere statement of the principle becomes the axiom of sufficient proof.

["The last question is, can David P. Sulouff recoup the usurious interest paid by him on the satisfied mortgages, against this proceeding to recover the balance due on the fourth mortgage? The answer to this depends upon how we view the mortgages. Were they segregated securities for an aggregated debt? or, in other words, did David P. Sulouff owe to John Wright a debt of $13,441.43, as an entirety for seven parcels of land, and four tracts were mortgaged for the whole, in such manner that each should secure a portion according to its value? We think that there was but one original debt as purchase-money of seven parcels of land, sold by Wright to David P. Sulouff, and that the separa-

[Parker v. Sulouff.]

tion of the whole into fragments, to adapt the charge to the ability
of the four parcels of land to pay the whole, had not the effect of
rendering each fragment an independent, individuated liability, so
as to prevent the recoupment of excessive interest paid upon three,
available in a sci. fa. issued on the fourth. This conclusion can-
not be avoided under the reasoning in Heath v. Page, 13 P. F.
Smith 108 ; Campbell v. Sloan, 12 Id. 481 ; Rheem v. Bosler, 22
Id. 54 ; Overholt v. Bank of Mt. Pleasant, 1 Norris 490 ; where it
is held that neither renewals, nor splitting up a debt, nor any device
that ingenuity can invent, will enable the lender to evade the
statute. The provision in the Interest Act of 1858, which pro-
vides, ' that it shall be lawful for such borrower, or debtor, at his
option, to retain and deduct such excess from the amount of any
such debt,' instead of suing to recover back such excess, is based
upon the well-known dominion which the lender exercises over his
borrower and how reluctant he is to give umbrage to his creditor
while he continues in his power, and hence the statute permits him
to defer recoupment until final payment would release him. With
this clear purpose expressed in the statute, it would ill accord with
the spirit of the act, to hold that when an entire liability was
divided into fragments, each would run its course as an inde-
pendent, separate obligation, compelling the debtor to raise a con-
troversy with his creditor at the final payment of each branch of
the indebtedness, thus exposing him to the mercy of his creditor.

" This view of the case allows David P. Sulouff a credit, on the
mortgage sued upon, for all excessive interest paid by him on
the other three satisfied mortgages. Thus :

| | | |
|---|---|---|
| Balance due on mortgage, 23d February 1878, | $2139 | 64 |
| Interest from 23d February 1878, to 23d February 1879, | 123 | 37 |
| Amount due, | $2263 | 01 |
| Credit or deduct the illegal interest and its interest, | 1463 | 01 |
| Plaintiff should have a verdict for, | $800 | 00"] |

Verdict and judgment accordingly, when plaintiff took this writ,
alleging that the court erred in admitting the above evidence, and
in the portion of the charge included in brackets.

*Louis E. Atkinson,* for plaintiff in error.—This was a proceed-
ing *in rem,* and David P. Sulouff had no interest in the thing
proceeded against, and payments made by him on other mortgages
on other lands should not have been admitted in evidence against
the claim of the plaintiffs. Nor was he in any condition to resist
this claim. It is true he was a party to the record, but this was
unavoidable, and he was merely a nominal party. He could not

13 NORRIS—34

be affected personally by the judgment, nor was his liability on his mortgage-bond influenced by the result.    It was therefore error to admit evidence. of usurious interest paid by· him on other mortgages :  Wilson *v.* McCullough, 7 Harr s 83 ;  Stevens *v.* N. P. Coal Co. 11 Casey 265 ;  Perkins *v.* Johnson, 7 Harris 512 ;  Hoffman *v.* Lee, 3 Watts 354.

The consideration of the deed from David P. to Keziah Sulouff having been in part the payment of the mortgage in favor of John Wright, and the conveyance having been made "under and subject" to the payment of the mortgage, the fact that the mortgage was a part of the consideration, and the land made subject to the payment thereof is in law an undertaking on the part of the grantee to pay this mortgage.    From the time she accepted the land under this conveyance, she was the debtor of John Wright ; this mortgage which she assumed to pay was "segregated" from its fellows, and as between her and David P. Sulouff and John Wright as mortgagee, the liability to pay the mortgage rested upon her exclusively, and David P. Sulouff was discharged therefrom : Hoff's Appeal, 12 Harris 203 ;  Lennig's Estate, 2 P. F. Smith 139 ;  Townsend *v.* Long, 27 Id. 143 ;  Merriman *v.* Moore, 9 Norris 78.

If these mortgages were not "segregated debts" when executed, the mortgage sued on, as between all the parties interested therein, became segregated, separated and distinct from the rest, when she became the owner of the encumbered land upon the terms named in the deed.    The true rule in this case is clearly laid down in the case of Macungie Savings Bank *v.* Hottenstein, 8 Norris 328, in which it is held "the rule that the vicious element in a usurious contract survives in all its transmutations, is confined to cases in which the obligor or promissor remains the same."    In the case in hand the debtor, as we have seen, did not remain the same.    Mrs. Sulouff took the place of David P. when the land was conveyed to her.    This case is within the principle of Miners' Trust Company Bank *v.* Roseberry, 31 P. F. Smith 309, in which it was held that the Act of May 28th 1858 (usury), applies only to the parties to the transaction, and that the purchaser, having bought subject to the judgment, is presumed to have paid as much as the amount of the judgment, less than he would have done, and it does not lie in his mouth to allege previous usurious transactions between the original debtor and his creditor.

*E. S. Doty* and *E. S. Doty, Jr.,* for defendants in error.—None of the cases are inconsistent with the doctrine that where there is a mortgage-bond, or a personal covenant in the mortgage for the payment of its consideration, the mortgagor, after he has parted with the mortgaged premises, is something more than a nominal party in a suit upon the mortgage, and that, as a defendant therein, he

may make any defence that is available in law or equity. It was not essential that Keziah Sulouff, grantee of the mortgagor, should have been a party to the suit upon the mortgage: Mather *v.* Clark, 1 Watts 491. The Act of 1705 does not require that the terre-tenants, or purchasers under the mortgagor, should be made parties to the scire facias on the mortgage: Mevey's Appeal, 4 Barr 80. But it was essential that David P. Sulouff, the mortgagor, should be a party. The plaintiff in error admits this, but alleges that he was merely a nominal party. He was more than a nominal party. In a suit on the bond which accompanies a mortgage, the verdict on the scire facias would be conclusive of the amount due: Roberts *v.* Williams, 5 Whart. 186.

By the acceptance of the deed Keziah Sulouff did not become the debtor of John Wright. The words in a conveyance "under and subject to a mortgage" do not import an assumption by the purchaser of the debt, unless there exist special circumstances to raise a covenant to that effect: Moore's Appeal, 7 Norris 450; Thomas *v.* Wiltbank, 6 W. N. C. 477; Merriman *v.* Moore, 9 Norris 78. It was not claimed on the trial that Keziah Sulouff had assumed any personal obligation to pay the mortgage debt. The plaintiff relied on the effect of the words in the conveyance. The mortgagee is not attempting to enforce the promise, and why may not the mortgagor, who is upon the record, defend for the benefit of his vendee? If he thinks proper to "donate" the con-sideration-money to his grantee, he wrongs no one. The jury have found that Wright received $1669.52 illegal interest on the identical debt sued for in this case. That money does not belong to him. He cannot retain it, but holds it for the use of the debtor, whose money it is: Heath *v.* Page, 13 P. F. Smith 121. But it is contended by the plaintiff in error that the mortgage sued became "separated and distinct from the rest" when Keziah Sulouff accepted the conveyance under and "subject to the payment of the lien of mortgage of John Wright by David P. Sulouff." This position is untenable. There was no change of securities, no sub-stitution. As between John Wright and David P. Sulouff the "obligor remains the same." The cases collected in Campbell *v.* Sloan, 12 P. F. Smith 481, unite in deciding with unmistakable emphasis that the taint of usury cannot be eradicated by the sub-stitution of one security, or one set of securities for another, so long as the original debt survives: Miller *v.* Irwin, 4 Norris 378; Lucas *v.* Bank, 28 P. F. Smith 228; Thomas *v.* Shoemaker, 6 W. & S. 179.

Mr. Justice GREEN delivered the opinion of the court, June 7th 1880.

This was an action of scire facias on a mortgage brought by the executor of the mortgagee against the mortgagor with notice to

terre-tenants. The defence was payment. A considerable amount of the payments given in evidence consisted of moneys paid in excess of legal interest due ,by the mortgagor, and claimed to be money of the mortgagor in the, hands of the mortgagee, and therefore to be deducted from the amount due upon the mortgage in suit. In point of fact the present mortgage was one of four originally given to secure payment of a debt of $12,441.43. Each mortgage was upon a different tract, but the debt was a single indebtedness arising out of various transactions and the amount fixed by an undisputed settlement between the parties. The plaintiff's testator executed a deed to the defendant, David P. Sulouff, on August 26th 1869, for seven tracts of land, the whole consideration being $13,441.43, of which $1000 was paid about the time of the conveyance. On the same day the grantee, Sulouff, executed four mortgages to the grantor Wright, upon four of the tracts for the payment of different sums at different times, but aggregating the sum of $12.441.43. The mortgage in suit was one of these four, and was for $3175.30, payable on April 1st 1873, and covered a farm containing three hundred and thirty-two acres. On this mortgage usurious interest was paid, the amount of which is undisputed, and being deducted leaves a balance due February 23d 1878 of $2139.64. This sum, together with interest to the date of the verdict, was claimed as the amount due the plaintiff. But the court permitted other payments of excessive interest upon the other mortgages to be deducted from the amount due upon the mortgage in suit, leaving a balance due of $800, and for this amount a verdict was entered by the direction of the court. The question is upon the correctness of the action of the court in allowing credit for the usurious interest paid upon the other mortgages. It would hardly be pretended that there was any error in the ruling of the court below if the parties had remained the same throughout, and the payments had all been made directly by the original mortgagor to the mortgagee. But the plaintiff claims, and it was the fact, that the parties did not remain the same, and that the payments were not all made by the mortgagor. On January 25th 1872, D. P. Sulouff and wife conveyed the land bound by the mortgage in suit to Keziah Sulouff in consideration of $1000, "and the payment of the mortgage to John Wright by David P. Sulouff." In the habendum clause of the deed was the provision that the property was to be held "subject to the payment of the lien of mortgage of John Wright by said David P. Sulouff."

It is claimed that after this conveyance, Keziah Sulouff became the debtor for the mortgage of Wright, that she was bound to pay the whole of it, and that no credit could be allowed for the usurious interest paid on the other mortgages by D. P. Sulouff. It is argued that D. P. Sulouff was free from all liability in relation to the mortgage, and could have no possible interest in an action

[Parker v. Sulouff.]

brought against the land, and further, that the sci. fa. on the mortgage was a proceeding *in rem* against the land alone.    We cannot agree to the conclusions drawn from these premises.    D. P. Sulouff, the original mortgagor, is one of the defendants in the suit.    He gave a bond, the payment of which was secured by this mortgage, and, of course, he is personally liable on the bond for the whole amount mentioned therein.    If any deficiency should arise after the land is sold under the sci. fa., he would be obliged to make it good.    He is, therefore, directly interested, first, as an actual defendant on the record, and secondly, as being personally liable for the same debt and bound to respond for any deficiency resulting from the sale of the land.    It would be very strange if he could not be permitted to reduce the amount of his liability in an action against himself on the mortgage given to secure the payment of the bond upon which his personal liability remained.    Moreover, although it may be very true that as between D. P. Sulouff and Keziah Sulouff, she was bound to pay the mortgage, that obligation on her part could not relieve him from his personal liability to Wright, the mortgagee.    Again, it must be observed that Keziah Sulouff did not agree to pay any particular sum as representing the amount due upon the mortgage.    It is not stated in the deed that she is to pay a specific money consideration, the aggregate of the mortgage and the $1000 to be paid to D. P. Sulouff.    She is to pay him that $1000, and she is to pay also "the lien of the mortgage," which means the amount due on the mortgage.    What that amount is must be ascertained outside of the deed.    As that sum was the amount legally due by D. P. Sulouff to John Wright, the state of the indebtedness between them becomes not merely a legitimate but a necessary subject of inquiry.    It is too plain for argument that as between them the payments of usurious interest upon the other bonds and mortgages, the whole representing one original debt, may be deducted from the amount of the mortgage in suit.    It follows that the court below was right in permitting the deduction of the amounts of excessive interest paid upon the other bonds given by the defendant, D. P. Sulouff to Wright, and therefore,

.The judgment is affirmed.